Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000357
29-JUN-2018
08:39 AM

NO. CAAP-17-0000357

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I,
Plaintiff-Appellee,
v.
SALUAFATA FAATEA, JR., aka Iosefa Faatea,
Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-CR. NO. 16-1-2030)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Reifurth and Chan, JJ.)

Defendant-Appellant Saluafata Faatea, Jr. (Faatea) appeals from the Judgment of Conviction and Sentence, filed on March 30, 2017 in the Family Court of the First Circuit (Family Court).[1] Following a trial by jury, Faatea was convicted on one count of abuse of family or household members, in violation of Hawaii Revised Statutes (HRS) § 709-906(1) (Supp. 2017).[2] The

---

[1] The Honorable Judge Fa'auuga To'oto'o presided.

[2] HRS § 709-906(1) states, in relevant part:

§709-906 Abuse of family or household members; penalty. (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4). The police, in investigating any complaint of abuse of a family or household member, upon request, may transport the abused person to a hospital or safe shelter.

Family Court sentenced Faatea to two years of probation with conditions, including two days of imprisonment, with credit for time served, the payment of various fees, and an order to participate in domestic violence intervention classes.

In his sole point on appeal, Faatea argues that the Family Court committed plain error by allowing the Plaintiff-Appellee State of Hawaiʻi (State) during closing argument to commit numerous instances of misconduct, including: (1) improper bolstering of a witness; (2) drawing attention to Faatea's decision not to testify; (3) misleading the jury about the law; and (4) suggesting Faatea was a bully, in an inappropriate appeal to jury sympathy.

Upon careful review of the record and briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we vacate and remand the case for further proceedings.

Because no objections were made at trial, we must first determine whether the prosecutor's statements were improper and, if they were, whether they constituted plain error affecting Faatea's substantial rights. See State v. Clark, 83 Hawaiʻi 289, 304, 926 P.2d 194, 209 (1996). The court will first consider each claim of prosecutorial misconduct and will then proceed to consider whether the misconduct, if any, affected Faatea's substantial rights.

A.    Claims of Misconduct

1.    Improper Bolstering

Faatea argues that the prosecutor engaged in misconduct

_____

"Family or household member":

(a) Means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons in a dating relationship as defined under section 586-1, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit;

. . . .

in closing argument by improperly bolstering the complaining witness's (CW) testimony through the expression of the prosecutor's personal views on CW's credibility. The relevant portions of the closing argument are set forth below with the alleged offending comments emphasized. The prosecutor argued:

> [CW] has lived a simple but emotionally rich and honest life. She is exactly the opposite of the rehearsed line corporate player that we talked about during voir dire. She is not a trained actress, okay? That is not her life. [CW] wears her heart on her sleeve. That's _why she was so emotional. She is an open book with nothing to hide. That's why you can trust her._ And that's how you know that when she got up on the stand and (indiscernible), _she was telling the truth._ _[CW] was telling the truth and there was no evidence to show she was not._ What you saw from [CW] when she took the stand was real, honest feeling, emotion, and that corroborates her story because what caused her to cry, what caused her to tear up and become emotional was reliving what she told you happened; reliving the hurt and the fear that the defendant, her husband, put her through. That's why she cried. _Those tears were honest tears that corroborates the story._ She is not a trained actor. _She is telling you the truth. You can trust [CW]._

(Emphasis added). Shortly thereafter, the prosecutor stated:

> Remember when we talked during voir dire that it's just like on the outside. You have to look at someone, and then make your choice. And if you choose to believe [CW], you must find the defendant guilty. Now, again, there's no evidence to show that she is lying. _And she testified credibly from the stand under oath._

During closing argument, the prosecutor is permitted to draw reasonable inferences from the evidence and is afforded wide latitude in discussing the evidence. Clark, 83 Hawaiʻi at 304, 926 P.2d at 209. It is improper, however, for the prosecutor to express his "personal view[] as to a defendant's guilt or the credibility of witnesses." Id.

> The rationale for the rule is that "[e]xpressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued." ABA Standards for Criminal Justice, Commentary, at 3.89. The Supreme Court has observed that a prosecuting attorney's "improper suggestions, insinuations, and especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

State v. Marsh, 68 Haw. 659, 660-61, 728 P.2d 1301, 1302 (1986).

Distinguishing between legitimate arguments from the evidence and the expression of improper views can be difficult because it is not necessary that the prosecutor explicitly indicate that a view on credibility is his own for it to constitute his personal view. See, e.g., State v. Suan, 121 Hawaiʻi 169, 174-75, 214 P.3d 1159, 1164-65 (App. 2009) (holding as improper: "The fact is that these officers have integrity. . . . [T]heir testimony really is a testament to the fact that the system does work. They were telling the truth. They have integrity. They could have come in here[,] no reports, told you anything. They didn't." (emphasis omitted)). The context in which the challenged statements are made is critical to informing the remark's appropriate interpretation. See State v. Krueger, No. CAAP-12-0000801, 2013 WL 6231717, at *12 (Haw. App. Nov. 29, 2013) ("We review the Prosecutor's remarks in context."); see also State v. Schmidt, 84 Hawaiʻi 191, 203, 932 P.2d 328, 340 (App. 1997) (when "[t]he prosecutor's use of the term 'we'" is "taken in context . . . ."). Unqualified endorsements are indicative of personal opinions, but statements "ultimately tethered to the evidence" are not. See State v. Kekaualua, No. CAAP-12-0000127, 2014 WL 1003607, at *3 (Haw. App. Mar. 13, 2014); see also State v. Basham, 132 Hawaiʻi 97, 115-16, 319 P.3d 1105, 1123-24 (2014); Cf. State v. Kruger, No. CAAP-12-0000801, 2013 WL 6231717, at *11-12 (Haw. App. Nov. 29, 2013) (concluding as proper a statement that "was ultimately tethered to evidence").

We conclude that the prosecutor's closing argument improperly imposed his personal view of CW's credibility onto the jury. While a few of the statements highlighted above can arguably be considered arguments tied to the evidence, such as arguing the jury could trust CW based on her demeanor and testimony in front of the jury, other statements give the impression that the prosecutor himself believed CW's testimony and, therefore, the jury should do so as well.

In the argument above, we conclude that the following

4

statements were not tethered to the evidence, but rather could be understood to be the prosecutor's personal view that was imposed upon the jury: (1) She is telling you the truth. You can trust [CW];" and (2) "And she testified credibly from the stand under oath." These statements were not tethered to the evidence at trial; rather, the statements sound like unqualified endorsements of CW's credibility. The statements are similar to the statements this court concluded were improper in Suan. See Suan, 121 Hawai'i at 174-75, 214 P.3d at 1164-65 (holding as improper: "The fact is that these officers have integrity. [T]heir testimony really is a testament to the fact that the system does work. They were telling the truth. They have integrity. They could have come in here[,] no reports, told you anything. They didn't." (emphasis omitted)).

Therefore, we agree with Faatea that the prosecutor improperly expressed his personal view of CW's credibility during closing argument on two occasions.

2. Comment on Failure to Testify

Faatea also argues that, in multiple instances, the prosecutor improperly commented upon his decision not to testify at trial. The prosecutor made multiple statements regarding CW's testimony being uncontroverted at trial. The prosecutor stated, "[CW] was telling the truth and there was no evidence to show she was not" and "Now, again, there's no evidence to show that she is lying." Finally, the prosecutor stated, "If you choose to agree with [CW], and there's no reason not to, you must find the defendant guilty."

The prosecution cannot comment on the defendant's failure to testify at trial because it infringes upon his right not to be a witness against himself. See Haw. Const. art. I, § 10; Tachibana v. State, 79 Hawai'i 226, 235, 900 P.2d 1293, 1302 (1995). The prosecution's comment on the defendant's failure to testify is improper where it was "'manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'"

5

State v. Padilla, 57 Haw. 150, 158, 552 P.2d 357, 362 (1976)[3] (quoting United States v. Wright, 309 F.2d 735, 738 (7th Cir. 1962)); see also State v. Valdivia, 95 Hawai'i 465, 482, 24 P.3d 661, 678 (2001) (quoting same).

> The prosecution is entitled to call attention to the fact that the testimony of the witnesses for the prosecution has not been controverted, unless the circumstance that the defendant is the only one who could possibly contradict that testimony would necessarily direct the jury's attention solely to the defendant's failure to testify.

Padilla, 57 Haw. at 158, 552 P.2d at 362-63; see also State v. Wakisaka, 102 Hawai'i 504, 515, 78 P.3d 317, 328 (2003) (same).

Faatea was charged under HRS § 709-906(1) with abuse of a family member. Only CW and Faatea were present when the alleged abuse occurred. Therefore, Faatea was the only person who could possibly contradict CW's testimony. Faatea also chose not to testify at trial. On three occasions the prosecutor referenced CW's testimony as not being contradicted at trial. We conclude that the above comments did indirectly and repeatedly reference and call attention to Faatea's failure to testify at trial. See Padilla, 57 Haw. at 158, 552 P.2d at 362-63; see also Wakisaka, 102 Hawai'i at 515-16, 78 P.3d at 328-29. Our conclusion that the statements were improper is bolstered by the fact that the prosecutor repeatedly highlighted that CW's testimony was not controverted, making it more likely that the jury's attention would be directed toward Faatea's decision not to testify. Therefore, we conclude that the above comments would naturally and necessarily be taken as a comment on Faatea's decision not to testify in his own defense, in violation of the direction of Padilla.

3.  Misstatement of the Law and Bullying

Faatea argues that the prosecutor misstated the purpose of HRS § 709-906, abuse of family or household members, by stating: "That's why we have these laws. That's why these laws are important to protect our sense of well-being and to keep

---

[3]  Padilla was abrogated on other grounds by State v. Cabagbag, 127 Hawai'i 302, 277 P.3d 1027 (2012).

people from bullying us."  Faatea argues that because nothing in the statutory language or legislative history supports these statements, the prosecutor misstated the purpose of the law.

HRS § 709-906(1) makes it a criminal offense to "physically abuse a family" member.  To "physically abuse" someone means to "maltreat in such a manner as to cause injury, hurt or damage to that person's body."  State v. Fields, 115 Hawai'i 503, 530, 168 P.3d 955, 982 (2007).  To "bully" someone, in this context, means to "to intimidate . . . by threats" or to "domineer."  Webster's Third International Dictionary 295 (1961).  Physical abuse is one of the ways that one person can intimidate or domineer another.  We conclude that the prosecution's characterization of the law was reasonable.  One of the explicit and obvious functions of the law is to protect family members from physical abuse from other family members, which can also serve to protect individuals from intimidation and threats, or "bullying," from that family member.  We conclude this characterization of the law was not improper.

4.    References to Bullying and Appeal to Jury Sympathy

Finally, Faatea claims that the prosecutor's statements suggesting that Faatea was a bully or bullied CW were improper as the comments were designed to inflame the passion or prejudices of the jury.  The prosecutor stated: "[a]nd when the defendant shoved her face, the very important law was broken, the law that protects people like [CW] from being bullied, harassed and hurt from someone bigger than her . . . ."  Later in his closing argument, the prosecutor stated, "[t]hat's why these laws are important to protect our sense of well-being and to keep people from bullying us."  The evidence at trial was that CW and Faatea got into a lengthy argument, and CW claimed Faatea was loud, yelled at her, and grabbed her face and threw her back.  CW claimed Faatea told her that he should "punch her face" and that she was scared.

During closing argument, prosecutors are permitted to draw reasonable inferences from the evidence and they are afforded wide latitude in discussing the evidence. Clark, 83

7

Hawai'i at 304, 926 P.2d at 209. The use of slang in discussing the evidence, if supported by the evidence, is not improper. Id. at 305, 926 P.2d at 210. As explained above, to "bully" someone means to "to intimidate . . . by threats" or to "domineer." Webster's Third International Dictionary 295 (1961). We conclude that the evidence supported the prosecutor's characterization of Faatea's alleged conduct as bullying, and we do not conclude that the term is such that it would inflame the passion of the jury or create unwarranted sympathy towards CW.

B.    Whether the Conduct Amounts to Reversible Error

We have concluded there were two types of prosecutorial misconduct in closing argument: (1) several statements by the prosecutor of his personal opinion on CW's credibility, and (2) multiple indirect references to Faatea's failure to testify at trial. We must now determine whether the conduct amounts to reversible error. See Suan, 121 Hawai'i at 173-74, 214 P.3d at 1163-64. "In order to 'determine whether reversal is required under [Hawai'i Rules of Penal Procedure] Rule 52(a) because of improper remarks by a prosecutor which could affect a defendant's right to a fair trial, we apply the harmless beyond a reasonable doubt standard of review.'" Id. at 173, 214 P.3d at 1163 (quoting State v. Espiritu, 117 Hawai'i 127, 140, 176 P.3d 885, 898 (2008)). "This standard requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction." Id. at 174, 214 P.3d at 1164 (internal citation and quotation omitted). "In order to determine whether the alleged prosecutorial misconduct reached the level of reversible error, we consider the nature of the alleged misconduct, the promptness or lack of a curative instruction, and the strength or weakness of the evidence against defendant." Clark, 83 Hawai'i at 304, 926 P.2d at 209 (quoting State v. Agrabante, 73 Haw. 179, 198, 830 P.2d 492, 502 (1992)).

In light of the previously identified instances of improper comments made by the prosecutor during closing argument, we cannot conclude beyond a reasonable doubt that the cumulative

effect of the prosecutor's improper comments did not contribute to Faatea's conviction. See Suan, 121 Hawai'i at 173-74, 214 P.3d at 1163-64 (holding the cumulative effect of improper comments substantially prejudiced defendant's right to a fair trial); see also Marsh, 68 Haw. at 661, 728 P.2d at 1302 (holding that "prosecutor's improper comments, taken as a whole, substantially prejudiced [defendant's] right to a fair trial"). The jury's decision was based almost entirely on whether they found CW to be a credible witness regarding the events at which only Faatea and CW were present. See id. (because credibility was a central issue in the case, the Hawai'i Supreme Court could not "conclude beyond a reasonable doubt that the prosecutor's remarks had little likelihood of influencing this critical choice").

As there was no objection at trial to closing argument, no specific curative instruction was ever presented to the jury regarding the prosecutor's improper comments during closing argument. See Clark, 83 Hawai'i at 304, 926 P.2d at 209. We are not persuaded by the State's argument that the general jury instructions, directing the jury to consider only the evidence at trial, rendered the prosecutor's improper comments during closing argument harmless. See Marsh, 68 Haw. at 661, 728 P.2d at 1302-03 (general jury instruction that argument of counsel is not evidence was not sufficient to support a finding that the impact of improper argument was harmless); see also State v. Underwood, No. SCWC-15-0000446, 2018 WL 2296960, at *8 (Haw. May 21, 2018) (general jury instruction included with other standard instructions not likely to negate prejudicial impact of prosecutor's inflammatory comments).

The determination of Faatea's guilt depended on the jury's assessment of CW's credibility. The above-identified instances of prosecutorial misconduct had a direct impact on the jury's assessment of CW's credibility and called attention to Faatea's exercise of his right not to testify at trial. Given that no step was taken to cure the harm from the misconduct, we conclude there is a reasonable probability the cumulative error

contributed to Faatea's conviction. Accordingly, we conclude there was plain error that affected Faatea's substantial rights.

Based on the foregoing, the Judgment of Conviction and Sentence, filed on March 30, 2017 in the Family Court of the First Circuit, is vacated, and this case is remanded for a new trial.

DATED: Honolulu, Hawaiʻi, June 29, 2018.

On the briefs:

William H. Jameson, Jr.,
Deputy Public Defender,
for Defendant-Appellant.

Donn Fudo,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

10